

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Paul E. Budlow
*Assistant United States Attorney*
Paul.Budlow@usdoj.gov
~~10.3.2021~~

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091

October 3, 2021

Joseph Murtha, Esq.
1301 York Road, Suite 200
Timonium, MD 21093

   Re: *United States v. Fernando Cristancho*,
     Criminal No. ELH-18-098

Dear Mr. Murtha:

   This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Fernando Cristancho (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by October 3, 2021, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offense of Conviction

   1. The Defendant agrees to plead guilty to Count One of the Second Superseding Indictment, which charges the Defendant with Coercion and Enticement, in violation of 18 U.S.C. § 2422(b). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

## Elements of the Offense

   2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   That on or about the time alleged in the Second Superseding Indictment, in the District of Maryland:

     a. First, the Defendant used a facility and means of interstate and foreign commerce;

1

    b.      Second, the Defendant used the interstate facility to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense.

### Penalties

    3.      The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|-------|---------|--------------------------------|----------------------|----------------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 2422(b) | 5 years | 30 years | Life (min. 5y) | $250,000 | $100 |

    a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant

Rev. August 2018

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Sex Offender Registration

4.      The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

Waiver of Rights

5.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

3

e.    If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.    If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

## Group One: Coercion and Enticement (Count 1)

7.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.  This Office and the Defendant further agree to the following United States Sentencing Guidelines (from the 2018 Federal Sentencing Guidelines Manual, effective November 1, 2018):

a.     The base offense level is 28, pursuant to U.S.S.G. § 2G1.3(a)(3).

b.     Pursuant to U.S.S.G. § 2G1.3(b)(1)(B), there is a two (2) level increase because the victim was in the care, custody, or supervisory control of the defendant. (Subtotal: 30).

c.     Pursuant to U.S.S.G. § 2G1.3(b)(3), there is a two (2) level increase because a computer or an interactive computer service was used to entice, encourage, offer, or solicit the minor victim to engage in prohibited sexual conduct. (Subtotal: 32).

d.     Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact. (Subtotal: 34).

e.     Pursuant to U.S.S.G. § 2G1.3(b)(5), there is an eight (8) level increase because the offense involved a minor who had not attained the age of 12 years old. (Subtotal: 42).

Groups Two through Seven: Production of Child Pornography, Relevant Conduct (Counts 2 through 7):

8.     This Office and the Defendant agree that the following sentencing guidelines factors are in dispute:  Whether the facts included in Statement of Facts, as well as any additional facts that this Office submits at sentencing, establishes the commission of sexual exploitation of a child with respect to Counts Two through Seven.

9.     The parties agree that if the Court finds that the facts establish sexual exploitation of a child, the following guidelines apply to each count:

Group Two (Count 2) (Minor Victim 4, age 5 months):

a.     This base offense level for production of child pornography is 32, pursuant to U.S.S.G. § 2G2.1(a).

b.     Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense.  (Subtotal: 36).

c.     Pursuant to U.S.S.G. § 2G2.1(b)(4)(B), there is a four (4) level increase because the offense involved material that portrays an infant or toddler.  (Subtotal: 40).

d.     Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant.  (Subtotal: 42).

5

Case 1:18-cr-00098-ELH   Document 121   Filed 10/04/21   Page 6 of 23

Group Three (Count 3) (Minor Victims 2 and 3, age 11 years) :

      e.    This base offense level for production of child pornography is 32, pursuant to U.S.S.G. § 2G2.1(a).

      f.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense.  (Subtotal:  36).

      g.    Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant.  (Subtotal:  38).

Group Four (Count 4) (Minor Victim 5, age 2 years, 6 months):

      h.    This base offense level for production of child pornography is 32, pursuant to U.S.S.G. § 2G2.1(a).

      i.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense.  (Subtotal:  36).

      j.    Pursuant to U.S.S.G. § 2G2.1(b)(4)(B), there is a four (4) level increase because the offense involved material that portrays an infant or toddler.  (Subtotal:  40).

      k.    Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant.  (Subtotal:  42).

Group Five (Count 5) ( Minor Victim 5, age 2 years 9 months):

      l.    This base offense level for production of child pornography is 32, pursuant to U.S.S.G. § 2G2.1(a).

      m.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense.  (Subtotal:  36).

      n.    Pursuant to U.S.S.G. § 2G2.1(b)(4)(B), there is a four (4) level increase because the offense involved material that portrays an infant or toddler.  (Subtotal:  40).

      o.    Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant.  (Subtotal:  42).

Group Six (Count 6) (Minor Victim 5, age 4 years, 10 months):

      p.    This base offense level for production of child pornography is 32, pursuant to U.S.S.G. § 2G2.1(a).

6

q.      Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

r.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. (Subtotal: 38).

<u>Group Seven (Count 7) (Minor Victim 5, age 4 years, 10 months):</u>

s.      This base offense level for production of child pornography is 32, pursuant to U.S.S.G. § 2G2.1(a).

t.      Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

u.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. (Subtotal: 38).

<u>Grouping:</u>

v.      Pursuant to U.S.S.G. §§ 3D1.2(d) and 3D1.4, instances of sexual exploitation of a minor do not group. The group with the highest level is 42 (Group 1), and depending on the Court's ruling on the dispute described in paragraph 8, there up to 5 additional groups equally serious or from 1 to 4 levels less serious. Thus, there could be more than 5 units and an increase of up to 5 levels. (Subtotal: 42 (Defense) up to 47 (Government)).

<u>Chapter Four Enhancement:</u>

10.     Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal: 47 (Defense) up to 52 (Government)). Irrespective of the Court's determination of the dispute in paragraph 8, the parties agree that this increase applies based on the conduct relating to Minor Victim 1 described in the Statement of Facts.

11.     This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this

Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Total: 45 (Defense) up to 50 (Government)).

12.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

13.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11 (c) (1) (C) Plea

14.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the following sentence is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a): a sentence of no less than ten (10) years and no more than twenty-five (25) years of imprisonment, and no less than ten (10) years of supervised release with the following conditions of supervised release:

a.      You must not have direct contact with any child you know or reasonably should know to be under the age of 18 without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places. (This does not include minor family members, with whom Probation may approve direct contact in advance.)

b.      You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

c.      To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

d.      You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

15.     For the purposes of this agreement, incarceration is a sentence to the Bureau of Prisons, and does not include any form of home confinement.

16.     This Agreement does not affect the Court's discretion to impose a lawful term of supervised release greater than ten (10) years, to set any additional lawful conditions of probation or supervised release, or to impose a fine.

17.     In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

18.     The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Second Superseding Indictment.

## Waiver of Appeal

19.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional

challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

           c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

    20.    a.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

           b.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including:

           i.     The following items originally seized by law enforcement authorities from the Defendant on September 17, 2017:

1. SanDisk Micro SD card, S/N 3041DGPSQ17Y;
2. Walgreens SD card, S/N BE0829213508D;
3. iPhone 6s Al688, IMEI 355769073028319; and
4. HP Pavilion G72 laptop, serial number 5CI0355125, containing a Western Digital Scorpio Blue hard disk drive, serial number WX71A7060147.

           c.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

           d.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

10

Rev. August 2018

e.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

21.     The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. Further, the Defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. The Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from the Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Defendant's Conduct Prior to Sentencing and Breach

22.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

23.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including

statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

24.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

25.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

/ss/

_____
Paul E. Budlow
Colleen E. McGuinn
Assistant United States Attorneys

Rev. August 2018

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____10/3/2021_____
Date

_Fernando Cristancho_
Fernando Cristancho

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____10 | 3 | 2021_____
Date

_Joseph Murtha_
Joseph Murtha, Esq.

13

## ATTACHMENT A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Fernando Cristancho ("Cristancho") is 65 years old, and is a resident of Harford County, Maryland. As detailed below, Cristancho used a mobile phone and the internet to persuade, induce, entice, and coerce John Doe, then age 11-13, to engage in sexual activity.

Cristancho was ordained as a priest in the Roman Catholic Diocese of Istmina-Tado, in the Republic of Colombia, South America, in 1985. He worked as a priest in Colombia until 1994, and then moved to Alexandria, Virginia, where he worked as an assistant priest from 1994 to 1997. In approximately 1999, Cristancho was granted faculties to work as a priest in the Archdiocese of Baltimore, and worked as a priest in Baltimore County, and then at St. Ignatius Catholic Church in Harford County. In 2002, the Archdiocese of Baltimore revoked Cristancho's faculties to work as a priest in the Archdiocese. Cristancho lived in Harford County, Maryland from 1999 to at least 2017.

John Doe (referred to as "Minor Victim 1" in the Second Superseding Indictment) was born in 1990, and was 11, 12, and 13 years old at the time of the offenses against him.

John Doe's family were members of St. Ignatius. Not long after Cristancho arrived at St. Ignatius in 1999, he began a friendship with John Doe's grandmother, and her grandson, John Doe, who was 8 years old. Cristancho began to spend time with John Doe's family outside of church, including meals at restaurants and the family's home, and at family gatherings. John Doe's grandmother attended Mass daily, and often took John Doe with her. As the grandmother grew close to Cristancho, he met her and John Doe for breakfast on a weekly basis. John Doe also became a lector at the church, with the defendant working with him and coaching him in that process. Cristancho communicated with John Doe's grandmother, including for the purpose of meeting with John Doe, through the use of mobile phones.

Cristancho's conduct towards John Doe, which began while John Doe was 11, and included the following:

- Cristancho would complain of a bad back and ask John Doe for back rubs.
- Cristancho offered John Doe alcohol.
- Cristancho took John Doe to dinner, kissed John Doe, acted as if they were in a romantic relationship, and told him that he loved him.
- Cristancho showed John Doe pornography including movies of sex acts between males and suggesting they do the same sexual activities.

After Cristancho was no longer working at the church, he arranged to hold religious services in the home of a parishioner, and also arranged to have John Doe perform as a lector or altar server.

In the summer of 2002, Cristancho invited himself to attend a family camping trip, and when he arrived, arranged to sleep in a tent next to John Doe. While in the tent with John Doe, Cristancho asked John Doe to place his (John Doe's) legs between Cristancho's. Cristancho explained to John Doe that he usually slept with a pillow to alleviate back pain, but since there was no extra pillow, he wanted to use John Doe's legs instead. John Doe did what he asked.

Following the camping trip, Cristancho arranged for John Doe to assist around Cristancho's house, including with his infant triplets (who were born in the Fall of 2001). Eventually John Doe would go to Cristancho's house without his grandmother, driven there by either his mother or grandmother, the arrangements having been made by Cristancho using mobile phones and the internet. Shortly after John Doe began assisting with the triplets at Cristancho's house, Cristancho arranged to have John Doe spend the weekend, which John Doe did on a regular basis well into 2003. It was during these weekends that Cristancho sexually abused John Doe. Cristancho sexually abused John Doe from 2002 through at least Fall 2003.

Cristancho quickly arranged for John Doe to sleep in his bedroom, initially on the floor. John Doe was aware that Cristancho locked the bedroom door while John Doe was inside. On one occasion, while in the bed with Cristancho, John Doe observed Cristancho lying next to him with his pants off, masturbating. Cristancho's abuse of John Doe included: Cristancho touched John Doe's penis with his hands; Cristancho put his mouth on John Doe's penis on approximately 10 separate occasions; Cristancho also attempted to put his penis in John Doe's mouth; Cristancho anally penetrated John Doe with his penis on approximately 5-6 separate instances; and on two occasions Cristancho coerced John Doe to use his penis to penetrate Cristancho's anus.

Cristancho used a facility and means of interstate and foreign commerce, to knowingly attempt to and did persuade, induce, entice, and coerce John Doe, who had not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense. On several occasions while John Doe was alone with Cristancho at his residence in Maryland, Cristancho engaged in sexual acts with John Doe, in violation of Subtitle 3 of Title 3 of the Maryland Code Annotated, Criminal Law Article.

Relevant Conduct:

As to Minor Victim 2, Minor Victim 3, Minor Victim 4, and Minor Victim 5, Cristancho was a parent, relative, or legal guardian of the minor victim, or the minor victim was otherwise in Cristancho's care, custody, or supervisory control at the time of the conduct described below. Additionally, the materials used to produce and store the files described below were manufactured outside of Maryland and traveled in interstate or foreign commerce.

Count Two:  Minor Victim 4:

2

Minor Victim 4 was born in 2011, and was an infant in January 2012. On January 18, 2012, Cristancho used a Motorola Droid to produce a series of eight (8) images of Minor Victim 4. Minor Victim 4 was in a bath towel and partially naked in the photos, and the final image in the series depicts Minor Victim 4, naked, with her legs spread, depicting Minor Victim 4's exposed genitals. Cristancho saved the photos of Minor Victim 4 to his SanDisk Micro SD card, serial number 3041DGPSQ17Y. The SanDisk Micro SD card was manufactured outside of Maryland and traveled to Maryland in interstate or foreign commerce.

Count Three: Minor Victim 2 and Minor Victim 3:

Minor Victims 2 and 3 were eleven years old on December 27, 2012. On December 27, 2012, Cristancho produced, or caused to be produced, the following images, using a Samsung digital camera: a series of 15 image files, including Cristancho kissing Minor Victim 2 on the mouth; Minor Victim 2 naked with his legs spread wide apart; Minor Victim 2 naked with his hands on his inner thighs and his legs spread apart focused on his exposed genitals; a close up of Minor Victim 2's genitals while Minor Victim 2 is using his hands to pull away his underwear to expose his genitals; and Minor Victim 3 wearing a tank top and underwear that are at her knees, standing with her arms out and legs spread, exposing her genitals. Materials used to produce and store the images were manufactured outside of Maryland and traveled in interstate or foreign commerce.

Count Four: Minor Victim 5:

Minor Victim 5 was born in 2012. Cristancho produced four images of Minor Victim 5 during a 30-second time frame on March 10, 2015, when Minor Victim 5 was 2 ½ years-old. The images were taken with Cristancho's iPhone 5s and found on Cristancho's iPhone 6s. The first three images depict Minor Victim 5 standing on the kitchen table, nude, with his penis visible. The fourth image is a close-up image of Minor Victim 5's penis, in the same location.

Count Five: Minor Victim 5:

Cristancho produced five images of Minor Victim 5 on July 4, 2015, when Minor Victim 5 was 2 years, 9 months old. Two of the images are of Minor Victim 5 naked, standing next to a mirror, and one that is a close-up image of his penis, with his hands holding his penis. The images were taken with Cristancho's iPhone 5s and were located on Cristancho's iPhone 6s and in Cristancho's Google account.

Count Six: Minor Victim 5:

Cristancho produced a series of four files of Minor Victim 5, produced on August 3, 2017, when Minor Victim 5 was 4 years, 10 months old. The files are close up images (2) and videos (2) of Minor Victim 5's exposed penis, while he is sitting on a toilet. The video shows a hand reaching for the penis and then pinching it between two fingers, and a man's voice is heard during

the video.  The four files were found on Cristancho's iPhone 6s and created using an iPhone 6s. The image files were also found in Cristancho's Google account.

Count Seven:  Minor Victim 5:

Cristancho produced a series of six files of Minor Victim 5 on August 6, 2017, when Minor Victim 5 was 4 years, 10 months old. The files are close up images (3) and videos (3) of Minor Victim 5's exposed penis, while he is sitting on the toilet, with feces in the bowl.  The files were found on Cristancho's iPhone 6s and created on an iPhone 6s.  The image files were also found in Cristancho's Google account.

Cristancho's Google and Internet Search History:

Cristancho's Google account was obtained by search warrant and included the images that are the subject of Count Five, described above. The account also contained records of the searches Cristancho performed while logged into Google, and the web sites he visited while logged into Google. Cristancho admits that Google records reflect his conduct, including the searches and websites visited contained on Exhibit 1 and Exhibit 2 to this Statement of Facts.

The Search of Cristancho's Residence:

In September of 2017, Cristancho went to Walgreens to use the store's photo printing equipment to print photographs.  Cristancho requested assistance, and while assisting him, a Walgreens' employee observed some of the images on Cristancho's iPhone.  The images included several photos of naked children and an image of what appeared to be a bite mark on a young boy's buttocks.  The Walgreens' employee made a report to police.  Law enforcement initiated an investigation, and a search warrant was executed at Cristancho's residence in Harford County.

On September 19, 2017, a search warrant was executed at Cristancho's residence at 811 Hayden Way, Bel Air, Maryland.  During the search warrant, investigator's seized various digital devices, including the following:

> iPhone 6s Al688, IMEI 355769073028319;
> SanDisk Micro SD card, S/N 3041DGPSQ17Y;
> Walgreens SD card, S/N BE0829213508D; and
> HP Pavilion G72 laptop, serial number 5CI0355125, containing a Western Digital Scorpio Blue hard disk drive, serial number WX71A7060147.

The iPhone listed above is the same phone Cristancho used at Walgreens in September 2017.

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

Fernando Cristancho

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

Joseph Murtha, Esq.
Counsel for Defendant

## Selected Google Search History
## (fdocristancho@gmail.com)

| # | Date & Time | Search |
|---|---|---|
| 335 | 7/3/2017 5:43:55 PM(UTC+0) | two young males having intercourse |
| 336 | 7/3/2017 5:43:50 PM(UTC+0) | two young males having intercourse |
| 337 | 7/3/2017 5:42:38 PM(UTC+0) | two young boys having sex |
| 338 | 7/3/2017 5:37:56 PM(UTC+0) | show me males having sex |
| 339 | 7/3/2017 5:36:15 PM(UTC+0) | show to me big dicks |
| 340 | 7/3/2017 5:33:26 PM(UTC+0) | show to me big pennes |
| 341 | 7/3/2017 5:32:35 PM(UTC+0) | big peanuts phenomenon |
| 342 | 7/3/2017 5:30:56 PM(UTC+0) | show me big dicks |
| | | |
| 1227 | 2/19/2017 6:24:00 PM(UTC+0) | show me big dicks |
| 1228 | 2/19/2017 6:22:52 PM(UTC+0) | i want to see a teenage male masturbating playing with himself |
| 1229 | 2/19/2017 6:22:27 PM(UTC+0) | i want to se a teenager male masturbating playing with himself |
| 1230 | 2/19/2017 6:20:03 PM(UTC+0) | male teen masturbating himself |
| 1231 | 2/19/2017 6:17:48 PM(UTC+0) | show mw a teen male masturbating himself |
| 1232 | 2/19/2017 6:16:03 PM(UTC+0) | show me a teen masturbating himself |
| 1233 | 2/19/2017 6:14:15 PM(UTC+0) | show me a dick masturbation |
| 1234 | 2/19/2017 6:13:38 PM(UTC+0) | masturbation alive |
| 1235 | 2/19/2017 6:11:26 PM(UTC+0) | show to me big dicks |

EXHIBIT NO. EXHIBIT 1 TO STATEMENT OF FACTS
CASE NO. US v. Cristancho, ELH-18-098
IDENTIFICATION
ADMITTED

1

**Selected Google Search History**
**(fdocristancho@gmail.com)**

| # | Date & Time | Search |
|---|---|---|
| 1474 | 1/24/2017 1:28:35 AM(UTC+0) | faucking teen males videos |
| 1475 | 1/24/2017 1:27:56 AM(UTC+0) | fucking teens |
| 1476 | 1/24/2017 1:26:32 AM(UTC+0) | fucking gays |
| 1477 | 1/24/2017 1:25:23 AM(UTC+0) | fucking gays |
| 1483 | 1/24/2017 1:00:04 AM(UTC+0) | men fucking dicks |
| 1484 | 1/24/2017 12:58:03 AM(UTC+0) | mens dicks fucking |
| 1485 | 1/24/2017 12:56:21 AM(UTC+0) | big dicks fucking gays |
| 1486 | 1/24/2017 12:51:59 AM(UTC+0) | fucking dicks |
| 1487 | 1/24/2017 12:43:13 AM(UTC+0) | show me a big dick |
|  |  |  |
| 1587 | 1/9/2017 5:56:20 PM(UTC+0) | show to me a big dick |
| 1588 | 1/9/2017 5:55:07 PM(UTC+0) | give me a big dick |
| 1596 | 1/9/2017 3:51:19 AM(UTC+0) | show me a big dick |
| 1597 | 1/9/2017 3:51:17 AM(UTC+0) | show me a big dick |
| 1598 | 1/9/2017 3:51:16 AM(UTC+0) | show me a big dick |
| 1599 | 1/9/2017 3:09:10 AM(UTC+0) | show to me a big dick |
| 1600 | 1/9/2017 3:06:41 AM(UTC+0) | show me a big dick |
|  |  |  |
| 3813 | 12/7/2014 2:22:57 AM(UTC+0) | i kiss a boy and i liked it lyrics |
| 3814 | 12/7/2014 2:22:47 AM(UTC+0) | i kiss a boy and i liked it lyrics korean group |

## Selected Google Search History
### (fdocristancho@gmail.com)

| # | Date & Time | Search |
|---|---|---|
| 3815 | 12/7/2014 2:22:25 AM(UTC+0) | i kiss a boy and i liked it lyrics Korean Group |
| 3816 | 12/7/2014 2:21:46 AM(UTC+0) | i kiss a boy and i liked it lyrics Korean Group |
| 3817 | 12/7/2014 2:20:56 AM(UTC+0) | i kiss a boy and i liked it lyrics Korean Group |
| 3818 | 12/7/2014 2:19:14 AM(UTC+0) | i kiss a boy and i liked it lyrics |
| 3819 | 12/7/2014 2:17:51 AM(UTC+0) | korean band I kiss a boy and I liked |
| 3820 | 12/7/2014 2:17:19 AM(UTC+0) | korean band kinky kiss that sings I kiss a boy and I liked |
| 3821 | 12/7/2014 2:17:07 AM(UTC+0) | korean band kinky kiss that sings I kiss a boy and I liked |
| 3822 | 12/7/2014 2:16:56 AM(UTC+0) | korean band kinky kiss that sings I kiss a boy and I liked |
| 3823 | 12/7/2014 2:16:44 AM(UTC+0) | korean band kinky kiss that sings I kiss a boy and I liked |
| 3824 | 12/7/2014 2:16:07 AM(UTC+0) | korean band that sings i kiss a boy and I liked |
| 3825 | 12/7/2014 2:15:50 AM(UTC+0) | korean band that sings i kiss a boy and I liked |
| 3826 | 12/7/2014 2:13:27 AM(UTC+0) | korean band that sings i kiss a boy |
| 3829 | 12/7/2014 2:11:12 AM(UTC+0) | Kinkykiss |
| 3830 | 12/7/2014 2:10:42 AM(UTC+0) | i kissed a boy, kinki kiss |
| 3831 | 12/7/2014 2:10:29 AM(UTC+0) | i kissed a boy, kinki kiss |
| 3832 | 12/7/2014 2:09:56 AM(UTC+0) | i kissed a boy |
| 3833 | 12/7/2014 2:09:20 AM(UTC+0) | i kissed a boy |
| 3834 | 12/7/2014 2:08:54 AM(UTC+0) | i kissed boy |

# Selected Google Web History
## (fdocristancho@gmail.com)

| # | URL | Last Visited |
|---|-----|--------------|
| 94 | https://www.pornhub.com/view_video.php?viewkey=32807635 | 7/3/2017 5:44:03 PM(UTC+0) |
| 95 | http://www.gettyimages.com/photos/boys-having-sex-with-each-other | 7/3/2017 5:43:00 PM(UTC+0) |
| 97 | https://www.pornhub.com/view_video.php?viewkey=158471879 | 7/3/2017 5:36:34 PM(UTC+0) |
| 98 | http://www.dailymail.co.uk/femail/article-2199227/Jonah-Falcon-13-5-inches-living-worlds-biggest-penis.html | 7/3/2017 5:33:50 PM(UTC+0) |
| | | |
| 407 | http://gaybf.com/hot-boys-big-cocks-and-nude-guys-with-big-dicks/?nats=MTkuMS4yLjIuMTYuMC4wLjAuMA | 2/19/2017 6:24:45 PM(UTC+0) |
| 408 | http://m.newhealthadvisor.com/how-to-masturbate-if-you%27re-a-boy.html | 2/19/2017 6:23:00 PM(UTC+0) |
| 409 | http://www.redtube.com/?search=school+boy+masturbating+himself+and+cums | 2/19/2017 6:20:10 PM(UTC+0) |
| 410 | http://www.pornhub.com/video?c=92&p=professional | 2/19/2017 6:19:27 PM(UTC+0) |
| 411 | http://m.hclips.com/videos/1abcd28456bfcee/ | 2/19/2017 6:18:16 PM(UTC+0) |
| 412 | http://m.hclips.com/videos/1abcd28456bfcee/ | 2/19/2017 6:16:14 PM(UTC+0) |
| 413 | http://www.pornhub.com/video?c=92&p=professional | 2/19/2017 6:14:22 PM(UTC+0) |
| 414 | https://en.m.wikipedia.org/wiki/Masturbation | 2/19/2017 6:13:46 PM(UTC+0) |
| 415 | http://www.100dicks.com/big-dicks | 2/19/2017 6:11:31 PM(UTC+0) |
| | | |
| 528 | http://teensboyvideo.com/ | 1/24/2017 1:28:55 AM(UTC+0) |
| 529 | http://www.xvideos.com/tags/teen-fucking | 1/24/2017 1:28:00 AM(UTC+0) |

1

EXHIBIT NO. EXHIBIT 2 TO STATEMENT OF FACTS

CASE NO. US v. Cristancho, ELH-18-098

IDENTIFICATION _____

ADMITTED

## Selected Google Web History
### (fdocristancho@gmail.com)

| # | URL | Last Visited |
|---|-----|--------------|
| 530 | http://www.xvideos.com/tags/gay-fucking | 1/24/2017 1:26:35 AM(UTC+0) |
| 531 | http://www.xvideos.com/tags/gay-fucking | 1/24/2017 1:25:35 AM(UTC+0) |
| 532 | http://www.pornhub.com/view_video.php?viewkey=1084 55914 | 1/24/2017 1:15:11 AM(UTC+0) |
| 533 | http://www.pornhub.com/view_video.php?viewkey=1084 55914 | 1/24/2017 1:00:10 AM(UTC+0) |
| 534 | http://www.pornhub.com/view_video.php?viewkey=1084 55914 | 1/24/2017 12:58:11 AM(UTC+0) |
| 535 | http://www.pornolaba.com/gays/best-big%20cock/1.html | 1/24/2017 12:56:29 AM(UTC+0) |
| 536 | https://www.flyingjizz.com/videos/big-cock/ | 1/24/2017 12:52:53 AM(UTC+0) |
| 537 | http://www.xvideos.com/tags/big-dick-fuck | 1/24/2017 12:52:04 AM(UTC+0) |
| 538 | http://www.100dicks.com/big-dicks | 1/24/2017 12:43:50 AM(UTC+0) |
| | | |
| 565 | http://www.pornhub.com/view_video.php?viewkey=1781 801796 | 1/9/2017 5:56:24 PM(UTC+0) |
| 566 | http://www.xvideos.com/tags/big-dicks | 1/9/2017 5:55:10 PM(UTC+0) |
| 569 | http://www.100dicks.com/big-dicks | 1/9/2017 3:09:18 AM(UTC+0) |
| | | |
| 786 | http://photobucket.com/images/espn%20naked%20erin %20andrews%20video%20peep%20pictures | 3/8/2016 2:58:50 PM(UTC+0) |
| 793 | http://photobucket.com/images/espn%20naked%20erin %20andrews%20video%20peep%20pictures | 3/8/2016 2:49:01 PM(UTC+0) |