**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CASE NO:  ELH-18-098** |
| **FERNANDO CRISTANCHO** | *UNDER SEAL* |

**GOVERNMENT'S SENTENCING MEMORANDUM IN SUPPORT OF A SENTENCE OF 25 YEARS FOR DEFENDANT FERNANDO CRISTANCHO**

Fernando Cristancho is a life-long child molester.  He admits to the repeated sexual abuse of a ██████,[1] his 12-year old parishioner, for more than a year.  The defendant's abuse of power to sexually exploit was not limited to ███ however.  Over a period of 18 years, both before and after ███ the defendant used his role as a ████████ Roman Catholic priest to gain trust and access to at least seven other minors, █████████████████████

This persistent pattern of behavior all arises from the same motivation: the defendant is sexually attracted to minors, particularly prepubescent minors.  He is unwilling, or unable, to conform his conduct to the dictates of the law.  The defendant's criminal acts were repeated, premeditated, intentional, and the product of his free choice.  Moreover, the defendant was in the highest position of trust in the lives of his victims – ████████ a priest – amplifying his exploitive acts and making the abuse even more egregious.

This case calls out for punishment and a significant sentence in order to protect society from the defendant, whose conduct demonstrates that he poses a clear and imminent threat to young children.  The defendant's admitted conduct – the repeated rape of ████████ – demands

---

[1] ████████ is referred to as John Doe in the plea agreement, and Minor Victim 1 in the Second Superseding Indictment.  This document is filed under seal and refers to the victim and his family members by their true names.  A redacted version will be filed on the public record.

[2] A timeline of events is attached as Exhibit A for convenience

a significant period of incarceration and easily justifies a 25 year sentence.  The defendant's years long repeated abuse of other vulnerable minors, including parishioners ████████████, further demands a sentence that protects the victims in this case and all the children the defendant may encounter, as well as sentence that will send a message to the defendant and the public that those who prey on the weakest of us will face certain and just punishment.  For the reasons set forth below, this Court should impose a sentence of 25 years imprisonment followed by supervised release for the remainder of the defendant's life.

I.      **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE**

      **A.  The Defendant's Sexual Abuse of** ████████████

████ was 8 years old when he met "Father Fernando." ████ family were all parishioners at St. Ignatius Church where the defendant was a priest.



████ ████████ ███ ███ took ████ with her to attend daily Mass, and the defendant would often join ████ and ████████████ for breakfast following the service.  The defendant then started to spend time with ████ ████ family outside of church, including family meals at

███ home, holidays, and birthdays.

 

 

The defendant also accompanied the family on camping trips and vacations.



The defendant ingratiated himself to ▮▮▮ family, giving himself access to ▮▮▮ and the opportunity to groom ▮▮▮ regularizing casual affection and time alone with him.

The defendant's grooming included disturbing behaviors such as taking ▮▮▮ out to dinner as if they were dating, kissing ▮▮▮ calling him "papi," and acting as though their relationship were romantic.  The defendant also showed ▮▮▮ pornographic videos, including males engaging in various sex acts, as a way to normalize sexual activity.

In 2002, the defendant began arranging for ▮▮▮ to come to his home on the weekends, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The defendant encouraged and arranged for ▮▮▮ to stay overnight.  During these occasions, the defendant had ▮▮▮ sleep in his room with the door locked, and it was then the defendant sexually abused ▮▮▮ by engaging in fellatio and anal sex, all while ▮▮▮ was 11, 12, and 13 years old.  Because the defendant was his priest and so close with his family, ▮▮▮ was afraid to confide the abuse to anyone.

▮▮▮ kept the abuse a secret for years, naively hoping that it would simply fade into his past.  As an adult, ▮▮▮ came to realize that he could not escape the trauma he was suffering from the defendant's abuse of him.  In June 2016, he contacted the Archdiocese of Baltimore to seek counseling.  ▮▮▮ was 25 years old.  It was the first time he had ever spoke about the defendant and the sexual abuse he inflicted on ▮▮▮

**B. The Defendant's Exploitation of ▮▮▮▮▮▮ ▮▮▮▮▮**

In 2001, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] The defendant admits that he produced images of ▮▮ children's genitals, but disputes that these images depict sexually explicit conduct.  Doc 121, Plea Agreement, ¶ 8.  The defendant's production of these images for his own sexual gratification, and the law relating to the elements of sexual exploitation of a child is discussed below.

[4] ▮▮▮ is identified in the Second Superseding Indictment as "Minor Victim 2", and ▮▮▮ is identified as "Minor Victim 3".  Both ▮▮▮ and ▮▮▮ are the subjects of Count Three.

████████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ (born in 2011) and ████ (born in 2012).[5]  It was during this time, just

after the births of ██████ two children, that the defendant began to take photographs of ███

████ genitals.

1.  Count Two – ████

The images of ██████ were taken when she was five months old, in ████ 2012.  The

pictures were taken while ████ ████████████████████, following a bath.  ██████ is initially

seen ██████████████ wrapped in a bath towel.  As the images progress, they begin to focus

solely on ██████ concluding with an image focused on her legs spread and exposed genitals.  A

review of the images, confirmed by ████ ████ reveals that the images were taken by the

defendant in a surreptitious manner, so that ████████ would not know that the defendant was

producing an image focused on ██████ exposed genitals.[6]

2.  Count Three – ████ & ████

The defendant took 15 pictures of ██████ and ██████ in his living room that include

images depicting both of their exposed genitals.  The images were taken during a 14-minute period.

<u>Images of ████</u>   The images of ██████ include: The defendant kissing ██████ on the

mouth; ████ sitting naked with his legs spread wide apart; ██████ standing naked with his hands

---

[5] ████ is identified in the Second Superseding Indictment as "Minor Victim 4" and is the subject of Count Two, and
██████ is identified as "Minor Victim 5" and is the subject of Counts Four through Seven.

[6] An HSI Special Agent is available to display various digital files to the Court in chambers prior to the sentencing.
Government counsel will contact chambers to schedule a mutually agreeable time.

on his inner thighs and his legs spread apart focused on his exposed genitals; and a close up of ▮▮▮▮ genitals as ▮▮▮▮ pulls away his underwear to expose them.  ▮▮▮▮ was eleven years old at the time these photographs were taken.

<u>Images of</u> ▮▮▮▮   The images of ▮▮▮▮ show her wearing a tank top while her underwear is down around her knees and her genitals are exposed.  ▮▮▮▮ arms are extended away from her body and her legs are spread.  ▮▮▮▮ was also eleven years old at the time these photographs were taken.

   3.  Counts Four, Five, Six and Seven – ▮▮▮▮

The images of ▮▮▮▮ were taken when he was two years old (in 2015) and later when he was four years old (2017).

<u>Count 4</u>:  The defendant took four images of ▮▮▮▮ then age 2, while ▮▮▮▮ was standing on the kitchen table, naked, with his penis exposed.  The fourth image is a close up image of ▮▮▮▮ penis.

<u>Count 5</u>:  The defendant took another five images of ▮▮▮▮ at age 2, naked, leaning against a mirror.  One of the images is a close-up of picture of ▮▮▮▮ penis, depicting ▮▮▮▮ holding his penis.

<u>Counts 6 & 7</u>:  When ▮▮▮▮ was four years old, the defendant produced two sets of images and videos focused on ▮▮▮▮ exposed penis while ▮▮▮▮ was sitting on the toilet.  In the Count 6 series, an adult male hand is seen reaching for ▮▮▮▮ penis and pinching it between two fingers.

**C.  The Defendant's Google Searches and Web History**

The defendant saved the images of ▮▮▮▮ penis that are the subject of Count Five in his Google account.  The Google account also contained records of the defendant's internet searches

and web sites visited.[7]  The defendant's search and website history reflect the defendant's interest in pornography of minors engaged in sexually explicit conduct, and his sexual attraction to minors.

### D.  The Defendant's Pervasive Sexual Abuse of Others[8]



1.  The Defendant's Years Long Sexual Abuse of [redacted]

Between 1995 and 2001, the defendant sexually abused [redacted].  [redacted] was 7 years old when the abuse began, and thirteen when it stopped.  While living in Virginia, the defendant ingratiated himself into [redacted] family as a parish priest looking for assistance with English lessons.  The defendant groomed [redacted] beginning with snuggling on the couch and putting his arm around her.  Eventually, he touched her vaginal area both over and under her clothes.  In 1998 [redacted] family moved to Bel Air, Maryland, and around the same time, the defendant moved to Bel Air and St. Ignatius church.  Although [redacted] hoped she had escaped the defendant's abuse, instead the abuse progressed as the defendant continued to come to her home under the guise of being a family friend and spiritual advisor.  The defendant began to force [redacted] to touch his penis, and he also rubbed her vaginal area, digitally penetrating her.[9]

Although [redacted] disclosed the abuse to her mother initially, and then again in 2001, the defendant's abuse was not reported to any law enforcement agency or other authority.  The implications of the defendant's role as her priest, combined with [redacted] young age, silenced

---

[7] The Google searches and web history were attached to the Statement of Fact submitted to the Court on October 4, 2021, as Exhibits 1 and 2.  They are attached here as Exhibit B.

[8] The defendant's sexual abuse of [redacted], [redacted], [redacted], [redacted], and [redacted] is not included in the stipulated facts, and presumably, the defendant will deny such abuse.  The government will establish the sexual abuse of these additional victims at the sentencing hearing, by a preponderance of the evidence.

[9] [redacted] is unable to attend the sentencing hearing due to an ongoing medical situation causing her to be immunocompromised in light of the pandemic.  The government previously notified the defense of its intent to rely on [redacted] emails, interviews, and written statements at sentencing.  The government further notified the defense that [redacted] would be made available for a deposition or questioning by defense counsel if they wished.

██████ voice for many years.  In 2012, ██████ reached out to the Survivors Network of those
Abused by Priests (SNAP) via email in an effort to report the abuse, although ██████ was not
yet ready to speak to law enforcement.[10]

Investigators contacted ██████ while preparing for trial in the summer of 2021. ██████
provided detailed information about her family and the defendant, officially reported the abuse for
the first time.[11]  At the government's request, ██████ prepared an affidavit, attached as Exhibit
E, further detailing the years long abuse by the defendant.  Based upon the affidavit, combined
with the consistent statements made by ██████ to SNAP and HSI, this Court can find by a
preponderance of the evidence that the defendant sexually abused ██████ when she was a minor.
The government asks that the Court rely upon these facts and find that they have been proven by
a preponderance of the evidence for purposes of sentencing.

    2.   The Defendant's Sexual Abuse of ██████ and ██████

In November 2005, ██████ told his ██████████, that the defendant put his
mouth on ██████ penis.  ██████████ immediately told her friend, ██████████,
who advised her to contact the children's pediatrician.[13]  Although contrary to Maryland law, the
pediatrician told ██████████ that due to the child's age, nothing could be done.[14]  Thus, the

---

[10] ██████ 2021 emails with SNAP were provided to investigators in the summer of 2021, when she first disclosed
the defendant's abuse, and are attached here as Exhibit C.

[11] The Report of Investigation of ██████ 2021 interview is attached as Exhibit D.

[12] Neither ██████ nor ██████████ will testify at the sentencing hearing.  Both are now adults and, ██████
██████ have indicated that they do not wish to participate.  Based on their prior statements, trial transcripts, and
judicial opinions regarding the abuse, all of which are attached as exhibits to this filing, the government has proven
that the defendant abused both boys, by a preponderance of the evidence.

[13] See Exhibit F, a transcript of ██████████ s testimony, as well as the testimony of ██████████.

[14]  See Exhibit J, at 30-36, and Md. Ann Code, Fam. Law, § 5-704 (Reporting of abuse or neglect – By health
practitioner).



abuse was not immediately investigated.

Several months later, in April 2006, ████████ and ██████ separately disclosed to their caretaker, ██████████, that the defendant put his mouth on their penises.  When ██████████ observed ██████████ touching his erect penis and told him to stop, ████████ told her: "██████████, I do not have to do what you tell me to do. I do what ████████ tells me to do … ██████ does this to me, and ██████ puts my penis in his mouth."  (Exhibit F, at 13).  ██████ disclosed similar abuse to ████████████.  *Id.*  ████████████ reported the abuse to law enforcement, and this time an investigation was conducted by the Harford County Sheriff's Office and the Department of Social Services. During separate interviews, both boys again each stated that ████████ touched their penises and put his mouth on their penises.[15]  While no criminal charges resulted, likely due to the ages of the boys, DSS's final report found that child abuse by the defendant was "indicated."[16]

████████████████ the defendant appeared before Judge Emory Plitt in the Circuit Court for Harford County during the fall of 2007 as part of ████████████████████████████ Over the course of six days, Judge Plitt heard testimony from numerous fact witnesses and received "voluminous" documents and exhibits, including the testimony of ████████████████████████ ████████████████, and the defendant.  Judge Plitt also reviewed the psychological evaluation

---

[15] See Exhibit G, the transcripts of ████████ and ████████ forensic interviews.  ██████ stated that the defendant touches his penis with his hands, "to make it grow."  Exhibit G, at 11.  ████████ stated that the defendant touched ████████ penis with his hands and with his mouth and that he saw the defendant put his mouth on ████████ penis as well.  Exhibit G at 22-23.

[16] See Exhibit H, DSS reports.  As Judge Plitt wrote, "Indicated as ████████████████████████████ means: 'a finding that there is credible evidence which has not been satisfactorily refuted that abuse, neglect or sexual abuse did occur.' Sexual abuse is later defined in that same section as (x): ████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ Exhibit J, at 22.

[17] Exhibit J, Judge Emory Plitt's written opinion, 12-C-03-2976.

that was conducted by licensed psychologist Michael Gombatz, dated August 14, 2007.[18]  Dr.

Gombatz interviewed █████████████████████████ and the defendant.  Exhibit I, at 1.

After all of the interviews and upon reviewing all the information available, Dr. Gombatz wrote,

"It is my clinical opinion that there was some wrongful sexual abuse on the part of Mr. Cristancho.

What it was and to what extent I doubt can be proven by either side."  *Id*. at 15.  He continued by

stating he did *not* believe that the abuse allegations were false or in some way suggested to the

children ██████████ or anyone else.  *Id*. at. 13, 15.  To the contrary, Dr. Gombatz observed

that it was the defendant who attempted to change the children's' statements:

> The attempt to influence the children was transparent with Mr. Cristancho. I have
> been doing psychological and custody evaluations for over 20 years. I have never
> seen this before. Mr. Cristancho was bringing the children with a facilitator to be
> interviewed because they have reported that he sexually abused his ██████. When
> I walked into the waiting room, ████████,[19] who had made the most severe
> accusation, had a $100 dollar bill in his hand. ████████ whose accusations were less
> severe, got a $20 bill. Poor ████████ who said ████████ didn't abuse her, only got
> a $10 bill. Mr. Cristancho explained, saying ████████ wanted a toy.  At worst, this
> could be interpreted as a ██████ bribing the children to deny sexual abuse. At best,
> it reflects a man with poor judgment attempting to influence the outcome of the
> evaluation. In my opinion, I think he was trying to bribe them. He certainly
> questioned them about the first interview and attempted to influence ████████ and
> ████████ to say that he did not do anything. In fact, ████████ initially told me he was
> going to lie.

*Id*. at 16.  Additionally, Dr. Gombatz discussed the reasons for the defendant's manipulation █

██████████

> I noted in 2004, "Mr. Cristancho's duplicitous behaviors in hiding his identity as a
> priest was without remorse or hesitation and reflects an anti-social component to
> his character.  He can justify nearly anything to obtain his end."  As a psychologist,
> one has to at least raise the question, why did Mr. Cristancho█████████████████
> ███████████████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████████████
> █████████████████████████



---

[18] Exhibit I, August 14, 2017 Updated Psychological Evaluation by Michael W. Gombatz, Ed.D.

[19] ██████████████████████████████████████████████ ███████████████████████████████,

*Id*. at 17.

After reviewing the evidence, Judge Plitt issued a written opinion including the following, "Accordingly, based on all of the above, there is absolutely no doubt in my mind that there are reasonable grounds by a clear preponderance of the evidence to believe that ████ and ████ have been abused by [the defendant].  Likewise, I cannot in good conscience find by a preponderance of the evidence that there is no likelihood that such abuse will not happen in the future."  Exhibit J, at 43.  Judge Plitt ordered sole legal and physical custody of the children to ████ ████

The defendant appealed Judge Plitt's ruling to the Maryland Court of Special Appeals.  His primary argument was that Judge Plitt was "clearly erroneous" in finding that he sexually abused ████ and ████   The Court of Special Appeals affirmed Judge Plitt's ruling in an opinion authored by the Honorable Deborah Eyler, on October 27, 2008.[20]  Judge Eyler wrote that the circuit court found "as a matter of fact, that [the defendant] had sexually abused ████ and ████ Exhibit L, at 11. ████████████████████ ████████

In 2013, the defendant and ████████ appeared again in the Circuit Court for Harford County for a weeklong trial on ████████████.  The Honorable Judge Angela Eaves presided over the hearing, and she heard from numerous witnesses.  In her written opinion, Judge Eaves stated that she agreed with the previous factual findings that the defendant sexually abused ████ and ████.[21]  "The 'indicated' finding of abuse is

---

[20] Exhibit K, Unreported opinion of the Court of Special Appeals, *Cristancho v. Fernandez*, No. 2263 (Md. App., filed Oct. 27, 2008).

[21] Exhibit L, Judge Angela Eaves' written opinion, *Cristancho v. Fernandez*, 12-C-03-2976, Harford Co Cir Ct, (filed Dec. 17. 2013).

long settled, not only by the decision of Judge Plitt, but also by the decision of the Court of Special Appeals affirming the ruling of Judge Plitt.  Mr. Cristancho has provided no evidence that █████ █████ fabricated the abuse then, or now."  Exhibit L, at 32.

The evidence before this Court establishes the defendant's sexual abuse of █████████ and █████.  Based on the transcripts of █████████ and █████ 2006 interviews, the trial testimony of █████████████ and █████████████, and Dr. Gombatz's psychological evaluation of the defendant detailing his conclusions and the defendant's manipulative conduct towards ███ children, and applying the same standard applied by prior courts deciding precisely the same issue, the sexual abuse has been established by a preponderance of the evidence.  This Court can also consider the written opinions of Harford County Circuit Court Judges Plitt and Eaves, and the Court of Special Appeals, in reaching the same conclusion.  Additionally, and sadly, this Court has evidence before it that none of those courts had – 18 years of the defendant's sexual abuse of children and his sexual attraction to children.  This additional conduct spans from years prior, through years, after the defendant abused █████████ and █████.  Combined with the evidence and findings referenced above, this additional conduct of years of admitted and proven child sex abuse and exploitation establishes, *by any standard of proof*, that the defendant sexually abused █████████ and █████████████ when they were four years old.

3.   █████████████

In August 2017, the defendant entered the Walgreens in Abingdon, Maryland, in order to print photographs from the kiosk there.  He enlisted the help of █████████████████, a Walgreens employee, because he could not get his iPhone to connect to the photo kiosk.  As █████████████ assisted the defendant, she noticed the naked images of █████████████ in the defendant's photo gallery.  She contacted law enforcement, and the Harford County Sheriff's Office began

investigating.  Within days, the Harford County Sheriff's Department also received an allegation of physical sexual abuse by the defendant towards ███.

On October 17, 2017, ███ who was four years old, was taken to the Baltimore County Child Advocacy Center for a forensic interview.[22]  Child Forensic Interviewer ██████████, conducted the interview.  During the interview, ███ told M██████ that ██████ kissed him on the lips, "open," and that this is "bad."  Exhibit M, at 8.  ████ also described that he would take a bath with the defendant who would touch ██████ penis.  *Id*. at 13-14.  ████ told ████ that he had put his mouth on Cristancho' s penis as well.[23]  *Id*. at 18.  ████ like and ████ before him, was four years old when he disclosed that ██████ put his mouth on his penis.

4.  ████████  ████████

Between 1999 and 2001, the defendant groomed and attempted to abuse ████████ who was between the ages of thirteen and fifteen at the time.[25]  ████████ was already an altar server at the parish when the defendant began working at St. Ignatius.  The defendant quickly befriended ████████ often communicating with him outside of Mass.  ████████ has described how the defendant rubbed his shoulder and touched his thigh on different occasions, and

---

[22] See Exhibit M, the transcript of ██████ October 17, 2017, interview.  ████ English at the time was so poor that the interview was conducted in Spanish.

[23] ██████████, now age 9, will not testify at the sentencing hearing.  Based on ██████ disclosure, the reports regarding the defendant's sexual abuse of ████ as well as the substantial evidence of the defendant's sexual attraction to minors and sexual abuse of minors ██████████████████, the evidence establishes the defendant's sexual abuse of ████ by a preponderance of the evidence.

[24] ██████████ will testify at sentencing hearing, establishing by a preponderance of the evidence that the defendant groomed him for abuse, and attempted to sexually abuse him.

[25] ██████████ reached out to law enforcement when he first heard about the defendant's arrest in Harford County.  Once contacted by investigators, ██████████ provided a detailed statement, attached as Exhibit N.  ████ ██████ will testify and provide a victim impact statement.  The government asks that the Court rely upon this testimony, and find that the grooming behaviors and attempted abuse have been proven by a preponderance of the evidence.

13

even showed him a pornographic magazine, attempting to discuss sexual gratification and masturbation with ████████. The defendant told ████████ that he was in love with him, and after ████████ moved away to Michigan with his family, Cristancho continued to contact him, even telling ████████ about the pending birth of his triplets and how he was going to name one of his sons after ████████.■

## II.   GUIDELINE CALCULATION

### A.  Statutory Maximum Sentence

The statutory maximum penalty for a violation of 18 U.S.C. § 2422(b), based on the date of the offense, is 30 years imprisonment.  PSR ¶ 144.  The statutory mandatory minimum penalty is five years.  *Id*.  The Court may impose a term of supervised release of not less than five years to life, pursuant to 18 U.S.C. § 3583(k).

### B.  Sentencing Guidelines Calculation

The Probation Office has calculated that the total offense level, after acceptance of responsibility, as 54 treated as a 43.  PSR ¶ 103.  The defendant's criminal history category is II. PSR ¶ 108.  Based on a total offense level of 43 and a criminal history category of II, the guideline range is life, but because the statutory maximum sentence is 30 years, the applicable guideline range is 30 years imprisonment.  PSR ¶ 145.  The government agrees with this calculation and asks that the court adopt the PSR's guidelines calculation at the time of sentencing.

### i.   Defense Disputed Guidelines Factors

Although the defendant admits that he produced images and videos of ████████ genitals on multiple occasions as discussed above and are detailed in the factual stipulation, the defendant disputes that his production of those images and videos was the sexual exploitation of a

---

■████████████████████████████████████████████
████████████████████

child.  Thus, the government anticipates that the defendant will argue that the total offense level, after deductions for acceptance of responsibility, is 45.[27]   The disputed guideline issue, while still necessary to the Court's requirement to calculate the guideline accurately, will not impact the final applicable guideline of 30 years imprisonment.  Thus, the government addresses this issue here.

As described above, Counts Two through Seven related to the defendant's deliberate and intentional production of images depicting the genitals of ████████████.  To establish sexual exploitation of a child, the government must prove the following elements by a preponderance of the evidence:[28]

1)  That the victims were under 18 years of age;

2)  That the defendant employed, used, persuaded, induced, enticed, or coerced the victims to engage in *sexually explicit conduct* for the purpose of producing or transmitting a visual depiction of that conduct; and

3)  That the visual depictions were produced using materials that had been mailed or transported in interstate or foreign commerce.

Sand, *Modern Federal Jury Instructions*, 62-2 (*emphasis added*).  The stipulated facts establish that the victims were under 18 years of age (all were prepubescent), that the defendant produced the depictions, and that the depictions were produced and stored using materials affected interstate and foreign commerce.  The sole dispute is whether the images depict *sexually explicit conduct*, pursuant to 18 U.S.C. § 2256(2)(A).[29]

Section 2256(2)(A) of Title 18 of the United States Code defines "sexually explicit conduct" in relevant part as "actual or simulated . . . masturbation; . . . lascivious exhibition of the

---

[27] Plea agreement, ¶ 11, p. 7-8.

[28] The standard of proof at a sentencing hearing is preponderance of the evidence.  *United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009).

[29] In relevant part, "Sexually Explicit Conduct" is the "actual or simulated… (iii) masturbation; (v) lascivious exhibition of the anus, genitals, or pubic area of any person."

anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(iii), (v).  *See also*, Sand,

Modern Federal Jury Instructions, 62-7.   Although the statute does not define "lascivious

exhibition of the … genitals," most circuits have adopted the factors set forth by the 9th Circuit in

*United States v. Dost*[30] to guide the factfinder in determining whether a visual depiction of a minor

constitutes a "lascivious exhibition of the anus, genitals or pubic area."   The factors, which are

included Sand, *Modern Federal Jury Instructions*, and were submitted as part of the Joint Proposed

Jury Instructions in this case are:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> (4) whether the child is fully or partially clothed, or nude;
>
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Sand, *Modern Federal Jury Instructions*, 62-7, Doc 90, 64-65.   Consistent with the ordinary

meaning of "lascivious exhibition," the *Dost* factors simply ask factfinders to consider, among

---

[30] *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986); *See also United States v. Rivera*, 546 F.3d 245, 252-53 (2d Cir. 2008); *Salmoran v. Attorney General*, 909 F.3d 73, 80 n.11 (3d Cir. 2018); *United States v McCall*, 833 F.3d 560, 563 (5th Cir. 2016); *United States v. Hodge*, 805 F.3d 675, 680 (6th Cir. 2015); *United States v. Petroske*, 928 F.3d 767, 774 (8th Cir. 2019); *United States v. Perkins*, 850 F.3d 1109, 1121 (9th Cir. 2017); *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019).   Although the First, Fourth, Seventh, and Eleventh Circuits have not expressly adopted the *Dost* factors, only the Seventh "discourage[s]" their "routine use," reasoning that § 2256(2)(A)(v)'s text is otherwise "clear." *United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014). The Fourth and Eleventh Circuits have declined to decide if the *Dost* factors apply in their circuits, see *Courtade*, 929 F.3d at 192; *United States v. Grzybowicz*, 747 F.3d 1296, 1306 n.8 (11th Cir. 2014), and the First Circuit has only cautioned that *Dost* should not "be used to limit the statutory standard," *United States v. Frabizio*, 459 F.3d 80, 90 (1st Cir. 2006), but see *United States v. Hillie* (D.C. Cir. Sep. 17, 2021) (rejecting the *Dost* factors, although this case is currently pending *en banc* review.)

other things, whether the image's focal point is the child's genitals or pubic area and whether the image was intended to elicit a sexual response in the viewer.

The six factors are neither exclusive nor conclusive, and it is not required that the subject depiction involve all of the factors.  *Id*.  Courts have noted that other factors may be relevant.[31] The Fourth Circuit has not specifically adopted the *Dost* factors or had occasion to define "lascivious exhibition," but has noted that the factors are "certainly relevant, though not controlling, to the question of whether a display of a minor's genitals or pubic area amounts to lasciviousness."  *United States v. Whorley*, 400 F. Supp. 2d 880, 883-84 (E.D. Va 2005).

Applying the *Dost* factors to Counts Two through Seven, the images of ███████ ████████  this case, it is clear that most apply to all of the depictions.[32]  First, an objective examination of the images alone, without consideration of the significant evidence in this case of the defendant's sexual attraction to minors, reveals the purpose of the depictions – to excite lust and arousing sexual desire within the plain meaning of "lascivious exhibition."  *See United States v. Courtade*, 929 F.3d 186, 192 (4th Cir. 2019), *as amended* (July 10, 2019).  Here, the defendant's careful manipulation and sometimes gradual focus of the defendant's lens onto the genitals of ██ ████  makes the lascivious exhibition obvious.  While close up images of a prepubescent minor's genitals alone could easily be considered "lascivious" and intended to excite lust and desire (5-month old ██████ vaginal area; ███████ exposed penis pulled out of his underwear; ███████ vaginal area exposed with her pants down; zoomed-in images of ██████ penis, one of him holding his penis; two separate sets of images solely of ██████ penis over a toilet while

---

[31] *United States v. Rivera* 546 F.3d 245, 249 (2d Cir. 2008) – The *Dost* factors are not mandatory, formulaic, or exclusive.  As factors, they mitigate the risk that jurors will react to raw images in a visceral way, rely on impulse or revulsion, or lack any framework for reasoned dialogue in the jury room. . . . [T]he *Dost* factors impose useful discipline on the jury's deliberations. They may do so imperfectly, but they have not been improved upon.

[32] Exhibit O, the government's chart applying the *Dost* factors to the images from Counts Two through Seven.

defecating), the *progression* of many of these images, from broader views to focusing on the genitals, further establishes the lascivious exhibition.

There is a lack of consensus in the Circuit Courts regarding to what extent the factfinder's determination of "lascivious exhibition" can consider the subjective intent of the photographer, if at all.[33]  Although unnecessary for the finding of "lascivious exhibition" in light of the objective examination of the depictions, evidence of the defendant's subjective intent, further supports the finding, preponderance of the evidence, that the defendant intended to produce a lascivious exhibition.  Looking beyond just the photos of ██████████████, it is clear that the defendant produced the depictions for his own sexual desire and to elicit a sexual response in the intended viewer – himself.

The defendant has pled guilty to the Coercion and Enticement of ███████ a minor child at the time.  This admission alone demonstrates that the defendant has a sexual attraction to children.  Additionally, the defendant's Google search history and web history demonstrate the defendant's sexual interest in children and bolsters his specific intent in producing sexually explicit images of his children in Counts Two through Seven.  Of note, the defendant specifically searched the internet for:

- 7/3/17:  two young males having intercourse/two young boys having sex – this is about one month prior to the defendant taking photos of ████ (Counts 6 & 7);

- 2/19/17:  show me a teen masturbating himself/I want to see a teenage male masturbating playing with himself;

- 1/24/17:  fucking teens;

---

[33] *United States v. Barry*, 634 Fed. Appx. 407, 413-14 (5th Cir. 2015); *United States v. Brown*, 579 F.3d 672, 682 (6th Cir. 2009); *United States v. Overton*, 573 F.3d 679, 688 (9th Cir. 2009) (The sixth Dost factor is "of particular utility" where the "criminal conduct at issue relates to a defendant's role in the *production* of the exploitative images under review, and not merely the *possession* of illicit materials. "Although it is tempting to judge the *actual* effect of the photographs on the viewer, we must focus instead on the *intended* effect on the viewer." *United States v. Villard,* 885 F.2d 117, 125 (3d Cir.1989). As we have held, "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles."

- 1/9/17:  show me a big dick;

- 12/7/14: I kiss a boy and I liked it lyrics/kinkykiss – this is within two years of the images of the defendant open mouth kissing ██████████████, and the accompanying images of ████████ penis.

These records are not merely words typed in a search engine, the defendant specifically entered these search terms and visited these websites in order to view the sexual imagery of children that resulted from his action.  This conduct is the backdrop for Counts Two through Seven, from 2012 to 2017, and reflects that not only that the defendant is sexually attracted to minors, but also that the defendant has a particular sexual interest in sexual *depictions* of minors, including of minors' genitals and minors engaged in sex acts.

Thus, for all of the reasons above, the defendant's production of images focused on the genitals of ██████████, as alleged in Counts 2 through 7 and on page 2 through 4 of the stipulated facts, the defendant sexually exploited ██████████ by producing depictions of the lascivious display of their genitals.

### III.   THE 18 U.S.C. § 3553(a) FACTORS DEMONSTRATE THAT THE DEFENDANT SHOULD BE SENTENCED TO 25 YEARS IMPRISONMENT

The nature and circumstances of Cristancho's crimes are truly disturbing, and strongly weigh in favor of a lengthy sentence.  The defendant engaged in a pattern of sexual exploitation of children that were entrusted to him as a priest ██████████████ for almost two decades.  He used his elevated status as a Roman Catholic priest to gain the trust of ██████████ family, allowing him unfettered access to ██████ a prepubescent boy who was raised to attend Mass and place his trust in his religious community leaders.

His other victims were also the children of parishioners, people who looked to the defendant with faith and trust, who called him "Father Fernando."  His abuse of ██████████████

19

began not long after he arrived in the United States and continued until 2001.  After ████
stopped the abuse the defendant moved to ███████████, whose family moved away before
the abuse progressed further.  The defendant then turned his attentions to ████ whose family
trusted the defendant completely.  The defendant raped and abused ███ for over a year, and even
after his privileges to practice publicly as a priest were stripped, he continued to use his status to
further the abuse.  Only a couple years later, ██████████████████████ and
████ disclosed the defendant's sexual abuse.  Unsurprisingly, they did not disclose it as a one-
time incident, but as something that was ongoing.  A███████████████████
████████████████████████.  And by
2012, the defendant was producing lascivious images of █████ and █████ From 2015
until his arrest in 2017, the defendant produced similar images of ██████████.  When
████ disclosed that the defendant sexually abused him, he was barely verbal, and it will likely
never be known how often and to what extent the defendant abused ████

The defendant molested and exploited all of these children in a predatory fashion, moving
from one to the next in order to meet his own personal gratification.  By chance he entered the
Walgreens in August 2017 in order to print a photograph; it was then the unraveling of his years
of opportunistic abuse began, leading back to ██████, ███████████, ██████████,
and the physical sexual abuse of his ████████.  Despite the defendant's years of lies, deceit,
and manipulative behavior, his years of abuse finally came to light.

The sentence ultimately imposed on the defendant must reflect the seriousness of his
offenses, promote respect for the law, and provide a just punishment for the offenses.  There can
be no question that the defendant's offenses, by its their nature over a shocking span of time, is
among the most serious under the law.  The Court is well aware of the victim ████ young age,

the nature of his unique relationship to the defendant, and the impact these crimes have had on

████ life.  The defendant was opportunistic, predatory, and rapacious.  The seriousness of the

defendant's offense necessitates that the defendant be sentenced to a significant prison term.

     The sentence imposed must also afford adequate deterrence to criminal conduct of this

nature and protect the public from further crimes of the defendant.  It is clear from the nature and

circumstances of the defendant's offenses that the defendant was obsessive in continual pursuit of

young victims.  Similarly, the public can only be protected from like-minded individuals with a

significant sentence that demonstrates the Court's willingness to deliver an appropriate

punishment.

## IV.    VICTIM IMPACT AND CONSIDERATION

     As the Court certainly understands, this has been a difficult journey for the victims and

their families, who are all permanently scarred by the defendant's abuse.[34]  As ██████ mother

██████████ wrote, "Mr. Cristancho was not just another man, he was a Catholic priest… That

level of power and prestige demands a level of accountability that is greater than the position

itself."  ██████ continues to suffer life crippling anxiety, twenty years later.  It impacts his

employment and financial stability, his relationships, his family, and his emotional health – ████

has been diagnosed with anxiety and depression.[35]  The aftermath of the abuse has been with him

through adolescence and young adulthood, and ████ will never know "what would have been,"

---

[34] Following the defendant's guilty plea, ██████████ informed government counsel that would not be attending
the hearing or submitting a victim impact statement.  As the Court can discern from the chronology of this case,
including the contentious custody battle arising out of the defendant's abuse, ██████████ has represented that
that she and her three children, ██████ ████████ and ██████████ have suffered enough over the last twenty years; for
her family, this nightmare never seemed to have an ending.  ██████████ has also represented that ██████,
now adults, also do not wish to be heard in sentencing by this court.

[35] Victim Impact Statements have been submitted from ██████████, his mother ██████████, ██████████
and ██████████.  The submissions are attached to this filing as Exhibits P, Q, R, and S.  An
additional statement will be submitted by ██████████ (██████████) prior to sentencing.

had he not been targeted by the defendant at the tender age of eleven.

The defendant's role as a ███████████████████ Father Cristancho," in relation to these victims will forever alter how they interact with the world. ████████████████ two of the most trusted and influential positions a man can have ████████████   As ██████████ ████████ describes, his trust in others "has been permanently damaged through [his] experience with the defendant."

███████████ provides perhaps some of the most poignant summaries of the defendant and his actions over two decades. "As I understand it, sex crimes against children are often difficult to prosecute due to a lack of clear evidence available, and the age of young victims impacts the ability and time it takes for victims to come forward.  From my own experience and in reading the outcome of this case, Cristancho's publicly known actions point only to the very tip of an alarming iceberg."  She continues, "His crimes span decades – imagine how many more children will be affected in the future if he is permitted to serve only the lightest sentence.  The damage he has already inflicted is done, but there is no need for others to suffer now that his behavior has come to light."

### V.   CONCLUSION

The defendant pled guilty on the first day of trial, and the government agreed to an 11(c)(1)(C) plea of no more than 25 years.  Assuming the Court accepts the "C plea," the agreement is a significant benefit considering the defendant's conduct, the maximum sentences, and the guidelines, which would otherwise be life imprisonment.  The defendant's abuse of ████ alone, with all the ensuing harm it caused ████ and his family, necessitates the maximum sentence allowed under the plea agreement.  But it is not just ████  The defendant's sentence must also consider ██████████   And ████████████████  And ██████████████.   And ████████

22

███████ And ████████████ And ████████████. It should also consider ████

████ and ████████████. This Court should not hesitate to impose the 25 year sentence.

For all of these reasons, the government respectfully asks this Court to sentence the defendant to 25 years' imprisonment, followed supervised release for the remainder of his life with all recommended conditions sought by U.S. Probation. The Court must also inform the defendant of his statutory responsibility to register as a sex offender, impose a $100.00 special assessment, and enter a final order of forfeiture.

Respectfully submitted,

Erek Barron
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

_____
Colleen Elizabeth McGuinn
Assistant United States Attorney